IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 3:14-cr-00063-GHD-SAA

DESCAMEDES Z. RICHARDSON  DEFENDANT

## MEMORANDUM OPINION DENYING DEFENDANT DESCAMEDES Z. RICHARDSON'S MOTION TO SUPPRESS EVIDENCE

On May 14, 2014, Defendant Descamedes Z. Richardson (the "Defendant") was indicted by the grand jury on two counts: transportation of a minor across state lines for purposes of prostitution or other illegal sexual activity in violation of 18 U.S.C. § 2423, and felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Now before the Court is the Defendant's motion to suppress evidence [16] wherein the Defendant brings a fruit-of-the-poison-tree challenge to the constitutionality of the search of his vehicle and arrest based upon a traffic stop that the Defendant argues was in violation of his Fourth Amendment rights. The Government has filed a response, and the Defendant has filed a reply. On August 20, 2014, the Court held a suppression hearing. Upon due consideration of the motion to suppress, response, reply, corresponding briefing, suppression hearing, and authorities, the Court is of the opinion that the motion to suppress evidence [16] is not well taken and should be denied.

The suppression-hearing evidence, which consisted primarily of the testimony of Desoto County Sheriff's Department Deputy Thomas Campbell and a video of the area where the traffic stop occurred, may be summarized as follows: In the early morning hours of April 30, 2014, Deputy Campbell was parked and patrolling the center median of Interstate 55 in the area south of Memphis, Tennessee heading into northern Mississippi. The posted speed limit on Interstate

1

55 is 70 miles per hour. At approximately 2:25 a.m., Deputy Campbell observed the Defendant's vehicle traveling southbound at approximately 35 miles per hour in the far-right lane, significantly slower than other traffic. After the Defendant's vehicle passed the area where Deputy Campbell was parked, Deputy Campbell began to follow the Defendant's vehicle down southbound Interstate 55. While following the Defendant for approximately two miles, Deputy Campbell observed that the Defendant's vehicle had veered to the left and hit the center-line dividing the same direction lanes and then crossed over the white lines dividing the Church Road exit ramp and the southbound lanes of Interstate 55 in order to exit onto Church Road. Deputy Campbell testified that he was concerned the Defendant was impaired or trying to get away from him. Deputy Campbell then activated his blue lights and stopped the Defendant's vehicle. Deputy Campbell approached the Defendant's driver side door where the Defendant was sitting with his hands in the air. Deputy Campbell testified that he considered this behavior to be "extremely uncommon," and that he asked the Defendant what the problem was. Deputy Campbell observed that a female passenger was in the front passenger seat. The Defendant told Deputy Campbell that he did not have a driver's license and gave him his information. Deputy Campbell told the Defendant that he pulled him over for driving 35 miles per hour on Interstate 55, which has a speed limit of 70 miles per hour, and for hitting the dividing line between lanes. The Defendant maintained that his driving behavior was due to trying to locate a house in Southaven, being unsure of where he was going, and following the GPS on his mobile phone. Deputy Campbell testified that the female passenger said her name was "Destiny," gave her age as "17," and that both the Defendant and "Destiny" maintained that "Destiny" was the Defendant's sister. Deputy Campbell testified that he considered the Defendant to be nervous and had the Defendant exit his vehicle. Deputy Campbell further testified that he then called for

2

backup. When asked, the Defendant consented to a search of his vehicle. Because the Defendant consented to the search of his vehicle, the only issue before the Court at this juncture is whether the stop itself violated the Defendant's Fourth Amendment rights, and the Government bears the burden of proof. *See United States v. Antu*, --- F. App'x ---, 2014 WL 2119858, at *1 (5th Cir. May 22, 2014); *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001).

In his briefing, the Defendant argues that Deputy Campbell did not have reasonable suspicion to stop him, specifically maintaining as follows: (1) there is no Mississippi law that forbids "hitting" the center line of the road; (2) the Defendant had slowed to 35 miles per hour on Interstate 55 because he was about to exit onto Church Road and the exit ramp had a suggested speed of 35 miles per hour; and (3) no minimum speed is posted on that particular section of Interstate 55 and thus the Defendant was not given notice that he needed to maintain a minimum speed of 40 miles per hour. In sum, the Defendant argues that the totality of the circumstances reveals that the officer did not have reasonable suspicion to stop the Defendant, and thus that the subsequent evidence obtained should be suppressed.

In its briefing, the Government argues that Deputy Campbell did have reasonable suspicion to justify the traffic stop, specifically because (1) the Defendant was driving extremely slowly on Interstate 55 two miles prior to his exit in violation of the minimum allowable speed, and (2) the Defendant had already passed the entrance lines for the Church Road exit ramp and had to quickly cross the white triangular divider in order to make a speedy exit. The Government maintains that the totality of the circumstances, including the Defendant's behavior and Deputy Campbell's law enforcement experience, gave Deputy Campbell reasonable suspicion to believe that he was dealing with an impaired or intoxicated driver that may have

3

been trying to avoid him. Therefore, the Government maintains that the stop of the Defendant was not in violation of the Fourth Amendment and the subsequent evidence obtained should not be suppressed.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated[.]" U.S. CONST. AMEND. IV. "[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning" of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979); *see also United States v. Shabazz*, 993 F.2d 431, 434 (5th Cir. 1993) (citing *Prouse*, 440 U.S. at 653, 99 S. Ct. 1391). Based on the United States Supreme Court's seminal decision in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), "a law enforcement officer may briefly detain a vehicle, consistent with the Fourth Amendment, when the officer has reasonable suspicion that 'criminal activity may be afoot.' " *United States v. Gonzalez-Rodriguez*, 456 F. App'x 494, 497–98 (5th Cir. 2012) (per curiam) (quoting *Terry*, 392 U.S. at 30, 88 S. Ct. 1868); *see also United States v. Ibarra-Sanchez*, 199 F.3d 753, 758 (5th Cir. 1999) (citing *Terry*, 392 U.S. 1, 88 S. Ct. 1868). The United States Supreme Court recently summed up the reasonable suspicion standard as follows: "Although a mere hunch does not create reasonable suspicion, [*Terry*, 392 U.S. at 27, 88 S. Ct. 1868], the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause, *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989)." *Navarette v. California*, — U.S. —, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (Apr. 22, 2014) (internal quotation marks omitted).

To determine the reasonableness of a traffic stop, the Court must examine (1) "whether the officer's action was justified at its inception" and (2) "whether it was reasonably related in

scope to the circumstances which justified the interference in the first place." *See Terry*, 392 U.S. at 19–20, 88 S. Ct. 1868. In the case *sub judice*, the Defendant argues that Deputy Campbell's action of stopping the Defendant was not justified, because the Defendant claims he was doing nothing to justify such a stop. Thus, the Defendant's arguments in support of suppression all go to the first prong of the *Terry* analysis.

Reasonable suspicion exists for the stop itself when the law enforcement officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." *Id.* at 21, 88 S. Ct. 1868; *see also United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006). The Court "must look at the totality of the circumstances of [the] case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002) (citation and internal quotation marks omitted). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* (internal quotation marks and citations omitted); *see Terry*, 392 U.S. at 27, 88 S. Ct. 1868.

An officer's "inarticulate hunches" do not suffice as a basis for reasonable suspicion. *Terry*, 392 U.S. at 22, 88 S. Ct. 1868. However, an officer's reasonable suspicion "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274, 122 S. Ct. 744 (citing *Sokolow*, 490 U.S. at 7, 109 S. Ct. 1581). "Any analysis of reasonable suspicion is necessarily fact-specific, and factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion." *Ibarra–Sanchez*, 199 F.3d at 759. Courts must "look[ ] at all

5

the circumstances together to weigh not the individual layers but the laminated total." *Id.* at 759 n.5 (internal quotation marks and citation omitted).

The Supreme Court recently discussed traffic behaviors in the context of reasonable suspicion in the *Navarette* opinion, stating first that "[r]easonable suspicion depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." 134 S. Ct. at 1690 (quoting *Ornelas v. United States*, 517 U.S. 690, 695, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996) (internal quotation marks omitted)). The Supreme Court then stated: "Under that commonsense approach, we can appropriately recognize certain driving behaviors as sound indicia of drunk driving," including weaving over the roadway, crossing the center-line on a highway, and driving in the median. *Id.* at 1690–1691 (citing *People v. Wells*, 136 P. 3d 810, 811 (Calif. 2006); *State v. Prendergast*, 83 P. 3d 714, 715–16 (Haw. 2004); *State v. Golotta*, 837 A.2d 359, 361 (N.J. 2003); *State v. Walshire*, 634 N.W.2d 625, 626 (Iowa 2001)).

In this case, Deputy Campbell claims that he stopped the Defendant because the Defendant was driving extremely slowly on Interstate 55 well before his exit, hitting the center line, and crossing over the white lines dividing the exit ramp and the southbound lanes of Interstate 55 in order to make what appeared to be a last-minute exit. Deputy Campbell testified that the Defendant's behavior led him to believe that the Defendant was impaired and intoxicated or avoiding him. Deputy Campbell further testified that he has made approximately 1,000 traffic stops during his approximate 3 years with the Desoto County Sheriff's Department and that approximately 25 stops of those stops were for driving under the influence.

The Court finds that based on the totality of the circumstances, including the Defendant's acts of hitting the center line, driving extremely slowly, and erratically exiting after being

followed by Deputy Campbell for approximately 2 miles, as well as Deputy Campbell's law enforcement experience in making traffic stops, Deputy Campbell had reasonable suspicion to stop the Defendant. The Supreme Court stated in *Navarette*: "[W]e have consistently recognized that reasonable suspicion 'need not rule out the possibility of innocent conduct.' " *Id.* at 1691 (quoting *Arvizu*, 534 U.S. at 277, 122 S. Ct. 744). Thus, even if the Defendant could have committed his actions innocently, Deputy Campbell can still be justified in stopping the Defendant based on his set of suspicious behaviors. Nor was it necessary for Deputy Campbell to continue to observe the Defendant's behaviors before stopping him once Deputy Campbell had reasonable suspicion. "[A]n officer who already has such a reasonable suspicion need not surveil a vehicle at length in order to personally observe suspicious driving." *Id.*

In sum, the Court finds that Deputy Campbell had reasonable suspicion to stop the Defendant, and thus that the subsequent evidence shall not be suppressed. The Defendant's motion to suppress evidence [16] is DENIED.

An order in accordance with this opinion shall issue this day.

THIS, the 22 day of August, 2014.

_____
SENIOR JUDGE